```
 1  John J. Verber, State Bar No. 139917
    Aimee Hamoy-Perera, State Bar No. 221228
 2  BURNHAM BROWN
    A Professional Law Corporation
 3  P.O. Box 119
    Oakland, California 94604
 4  ---
    1901 Harrison Street, 14th Floor
 5  Oakland, California  94612
    Telephone:   (510) 444-6800
 6  Facsimile:   (510) 835-6666

 7  Attorneys for Defendant
    ERCIVAN MARTIN
 8

 9  BARBARA J. PARKER, City Attorney, SBN 069722
    RANDOLPH W. HALL, Chief Assistant City Attorney., SBN 080142
10  ARLENE M. ROSEN, Senior Deputy City Attorney. , SBN 100160
    One Frank H. Ogawa Plaza, 6th Floor
11  Oakland, California  94612
    Phone:  (510) 238-6392 Fax:  (510) 238-6500
12  29115/1112739

13  Attorneys for Defendants

14  CITY OF OAKLAND, et al.

15
    MATTHEW A. SIROKA, SBN 233050
16  LAW OFFICE OF MATTHEW A. SIROKA
    1000 Brannan Street, Suite 400
17  San Francisco, California 94103
    Phone: (415) 522-1105 Fax: (415) 522-1506
18
    Attorney for Plaintiff
19  ROBERT OVETZ
```

20

## UNITED STATES DISTRICT COURT

21

## NORTHERN DISTRICT OF CALIFORNIA

22

### SAN FRANCISCO DIVISION

23

| | |
|---|---|
| 24  ROBERT OVETZ, | Case No.  C 12-6180 LB |
| 25           Plaintiff, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |
| 26      v. | Date:   September 12, 2013 |

| | |
|---|---|
| 1  CITY OF OAKLAND, a municipal corporation; OAKLAND POLICE <br> 2  DEPARTMENT, a municipal corporation; HOWARD JORDAN in his capacity as <br> 3  CHIEF of POLICE for CITY OF OAKLAND POLICE DEPARTMENT; ERCIVAN <br> 4  MARTIN, OAKLAND POLICE SERGEANT BEAVER, OAKLAND POLICE OFFICER C. <br> 5  O'CONNOR and DOES 1-20, inclusive, individually and in their official capacities as <br> 6  POLICE OFFICERS for the CITY OF OAKLAND <br> 7         Defendants. <br> 8 | Time:  10:00 a.m. <br> Place:  15th Floor, Dept. C |

9   The parties to the above-entitled action jointly submit this Case Management
10  Conference Statement:
11   1. <u>JURISDICTION AND SERVICE</u>
12   The complaint is based on federal jurisdiction of Plaintiff's claims under 28 U.S.C.
13  §§1331 and 1343 and 42 U.S.C. 1983.  The Court has supplemental jurisdiction over
14  state law claims under 28 U.S.C. §1367.  All named defendants have been served.
15   2. <u>FACTS</u>
16
17   (A) <u>Plaintiff's Statement of Facts</u>
18   On January 28, 2012 Mr. Ovetz, a professor of political science, was observing the
19  Occupy Oakland march and demonstration.  As he followed the march, he was eventually
20  cornered along with other members of the crowd and detained in front of the Oakland
21  YMCA at 2350 Broadway.
22
23   Plaintiff observed people running up on to the sidewalk.  As he looked southbound,
24  he saw a line of Oakland Police Officers rushing forward towards his location.  Plaintiff
25  looked for a means of egress with his bicycle, and saw another line of police officers
26  rushing towards him from the north.  He did not hear an order to disperse, but it was his

intention to leave regardless.

The crowd of approximately 300-400 people began to rush up onto the sidewalk and onto the steps of the YMCA. At this point there was no way for plaintiff to leave the scene without going through the line of advancing officers.

Plaintiff realized he was in imminent threat of arrest or danger of being trampled. He sought a location to lock up his bike. Before he could do so, an officer (Defendant DOE #1) shoved plaintiff into a group of people standing nearby.

Plaintiff lost his balance and another officer (Defendant DOE #2) smacked the right side of his head, hitting his nose and knocking his glasses off.

By this point, the crowd was panicking as police officers herded them together in close proximity. Plaintiff now searched the ground for his glasses, while holding onto his bike with one hand. The crush of the crowd propelled him forward and jammed him into another man with a bicycle.

Plaintiff managed to roll his bike around to his left, turned and found he was in the front row of the crowd facing the police. Plaintiff was now trapped in the crowd and surrounded by Oakland Police. The crush of the crowd was such that the could not effectively move.

Someone on Plaintiff's left locked his arm, and he held onto his bike with his right hand. Directly in front of him, 3-4 feet away, were DEFENDANT MARTIN, and a female officer, DOE #3. Plaintiff found his glasses on the ground in front of him, and called out to the officers that he wanted pick up the glasses. DEFENDANT DOE #3 gestured and may have spoken with DEFENDANT MARTIN, afterwards she indicated to Plaintiff that he could retrieve his glasses.

Plaintiff picked up what turned out to be one half of his glasses; the other half was lodged above his right ear.  Plaintiff yelled to the officers that he was not resisting arrest.

Either DEFENDANT DOE #4 or DEFENDANT MARTIN yelled at plaintiff to put his hands down and face the police.  Plaintiff complied.  Plaintiff yelled out that he had complied and asked them to look at this hands, which were by his waist.

DEFENDANT MARTIN grabbed plaintiff's bicycle and threw it forcefully; it landed perhaps 10 feet away.  Plaintiff again told Martin and DOES 1-10 that he was not resisting.

Without warning or explanation, defendant MARTIN AND DOES 1-10 grabbed plaintiff and violently pulled him to the ground behind the line of officers.    Defendant MARTIN and DOES 1-10 beat Plaintiff with a baton, striking him at least twice.  Plaintiff was unarmed.  He had been thrown to the ground, and was not engaged in any resistance to the defendants or any other officer.

Defendant MARTIN and DOES 1-10 grabbed plaintiff by the bicycle helmet he was wearing and slammed his head into the ground, causing his chin to strike the concrete and his teeth to clatter.

At no point did plaintiff physically or verbally resist his detention and arrest.  He complied with all orders he heard.  Defendant MARTIN and DOES 1-10 lifted plaintiff's head and slammed it down so that the right side of his head struck the ground.  He was forced to remain in that position until he was hand cuffed, lifted to his feet and brought over to the median of the street.

The wounds Defendants inflicted on Plaintiff required a visit to Highland Hospital emergency room.  He also suffered damage to two of his teeth, which required repair.  Plaintiff also suffered a large painful bruise in his right abdominal area as a result of the

baton strikes.

    Plaintiff's bicycle also suffered damage from being thrown by defendants Martin and DOES 1-10. Officer Martin #8696 grabbed Mr. Ovetz's bicycle from his hand and threw it down the street, causing minor damage to the bicycle. Martin and possibly as yet unidentified other officers grabbed Mr. Ovetz and threw him to the ground. Martin struck Mr. Ovetz at least twice with a baton while Mr. Ovetz was on the ground, causing severe bruising. In addition the force Martin and others used chipped Mr. Ovetz's tooth and may have caused more serious long term dental problems. At no time did Mr. Ovetz commit a crime or resist arrest.

    Officer Martin arrested Mr. Ovetz without probable cause and charged him with felony assault on an officer, misdemeanor battery on an officer and failing to leave the scene of a riot. Mr. Ovetz was held in custody for four days before appearing in court. Upon reviewing the case, the Alameda County District Attorney only filed a single misdemeanor count of resisting arrested (Penal Code section 148(a)). On June 22, 2012, the District Attorney dismissed the charges unconditionally.

    (B) <u>Defendants' Statement of Facts</u>

    On January 28, 2012, Plaintiff was among a group of 400 – 500 "Occupy" rioters, many of whom were carrying shields and were armed with hammers, bottles, rocks and other items used as weapons. The group of demonstrators exploded in number from about 300 rallying at Frank H. Ogawa Plaza in front of Oakland City Hall to about 800 within a two-hour period. The protesters left the plaza and marched to Laney College and the Henry J. Kaiser Convention Center. On East 12th Street, a number of protesters attempted to take down standing chain link fences. Riot police appeared and OPD

repeatedly issued dispersal orders over a loudspeaker, all of which the unruly crowd ignored. What began as a boisterous but peaceful protest turned into a riot, as individuals threw bottles and other objects, including a tear gas canister, at officers, and pushed against the police lines with shields.

The unruly crowd made its way up Broadway and attempted to take over the YMCA located at 2350 Broadway. OPD supervisors advised the group that they were under arrest, and surrounded them at the bottom of the staircase in front of the front door. The group violently fought the officers by throwing rocks and bottles and pushing or kicking them back. A large group had stormed into the YMCA.

Officers responded to the violent crowd by striking individuals on the legs and arms with their batons. Officer Martin, who had been struck on the helmet with a flying bottle, was aware that at least one protester had used a bicycle as a weapon by throwing it at an officer. He struck one individual in the hand to force him to drop a hammer. Officer Martin observed Mr. Ovetz lift up his bicycle and push it towards a number of officers, including himself. He grabbed his bicycle and ordered Mr. Ovetz to keep his hands down, but he failed to obey his commands and continued waving and swinging his arms. Officer Martin then grabbed plaintiff and pulled him out of the group. A number of rioters did not allow him to be arrested, and started pulling Mr. Ovetz away from the officer. In response, Officer Martin increased his force and pulled plaintiff to the ground. When Mr. Ovetz attempted to stand up, he struck him in the back area twice with his baton to gain compliance. Mr. Ovetz was arrested for violation of Penal Code §§245(c) (assault with a deadly weapon); 409 (rioting); and 243(b) (battery on a peace officer).

3. PRINCIPAL FACTUAL ISSUES IN DISPUTE

a. Whether dispersal orders were given to the crowd prior to the time plaintiff reached the YMCA;

b. Whether dispersal orders were given at the YMCA;

c. Whether the alleged strike to plaintiff's head was the inadvertent result of his loss of balance;

d. Whether Defendant Martin, or any OPD officer, threw Plaintiff's bicycle;

e. Whether Plaintiff assaulted any officer with a deadly weapon;

f. Plaintiff's injuries and damages;

g. Whether Plaintiff heard any orders to disperse or was reasonably able to comply with such order if it was heard;

h. Whether Plaintiff tried to get up after Defendant Martin, or any defendant threw him to the ground;

i. Whether Defendant OPD and City of Oakland had reason to believe Officer Martin had a pattern of improper conduct, including excessive force

j. Whether Defendant Martin or any of the officer defendants, believed Plaintiff was a member of the "Occupy Movement" and targeted him for arrest and/or excessive force on that basis;

k. Whether Plaintiff failed to comply with any lawful order.

4. PRINCIPAL LEGAL ISSUES IN DISPUTE

a. Whether Officer Martin had probable cause to arrest Plaintiff;

b. Whether any officer violated any of Plaintiff's constitutional rights;

c. Whether the officers' use of force, if any, was reasonable.

d. Whether defendants are liable for any post arrest injuries, including but not

limited to the length of his custodial hold;

  e. Whether any of the officers are immune from liability under qualified immunity;

  f. Whether the City is entitled to summary judgment under *Monell.*

  g. Whether any officers conspired to violate Plaintiff's rights by means of excessive force and false arrest;

  h. Whether any defendants are liable under state law;

  i. Whether any order Plaintiff is alleged to have violated was a lawful order;

  k. Whether any officer had probable cause to arrest Plaintiff for a felony assault on an officer.

### 5. MOTIONS

Defendants may bring a dispositive motion respecting the officers' qualified immunity; based on the *Monell* claims against the City and Howard Jordan; and on the pendent state tort claims based in negligence and for false arrest.

### 6. AMENDMENT OF PLEADINGS

Plaintiff has named Doe defendants and anticipates amending the complaint as the true names of the Doe defendants become known.  No other amendments are anticipated at this time.

### 7. EVIDENCE PRESERVATION

The parties will take all necessary steps to preserve all evidence, including electronically stored data.

### 8. DISCLOSURES

The parties have exchanged initial disclosures.

9. DISCOVERY

The parties agree to the following discovery plan:

(1)  Interrogatories, documents request and request for admissions:  35 per side in the absence of stipulation or court order.

(2)  Depositions:  no more than five per side prior to settlement discussions.  The parties have depositions scheduled for September 11, 13, and 20, 2013.

10. CLASS ACTIONS  - Not applicable

11. RELATED CASES  - Not known at this time

12. RELIEF - Plaintiff prays for relief as described in his Complaint; Defendants pray he take nothing.

13. SETTLEMENT AND ADR

The parties have a settlement conference scheduled with Judge Nathaniel Cousins on October 3, 2013 at 9:30 a.m.

14. CONSENT TO A MAGISTRATE JUDGE FOR ALL PURPOSES

The parties have consented to have a Magistrate Judge hear all further proceedings, including trial and entry of judgment.

15. OTHER REFERENCES  - Not applicable.

16. NARROWING OF ISSUES

The parties agree to meet and confer regarding any stipulations they may reach respecting the narrowing of issues and potential bifurcation of any issues, claims or defenses.

17. EXPEDITED TRIAL PROCEDURE – Not applicable

18. SCHEDULING

This matter is set for trial on July 14, 2014 with Magistrate Judge Beeler.

19. TRIAL

Each side requests a jury trial.

20. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES/PERSONS

None – the City of Oakland is permissibly self-insured.

Dated: September 5, 2013

BARBARA J. PARKER, City Attorney
RANDOLPH W. HALL, Chief Assistant City Attorney
ARLENE M. ROSEN, Senior Deputy City Attorney

By:_____/s/_____
Attorneys for Defendants,
CITY OF OAKLAND, et al.

BURNHAM BROWN

By: _____/s/_____
JOHN J. VERBER
Attorneys for Defendant
ERCIVAN MARTIN

LAW OFFICE OF MATTHEW A. SIROKA

By:_____/s/_____

Attorney for Plaintiff
ROBERT OVETZ

4834-6193-6917, v. 1